UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEJUAN BURRUS, | ) |
| Petitioner, | ) |
| v. | ) No. 1:17-cv-01048-JMS-MPB |
| DESHAN ZATECKY, | ) |
| Respondent. | ) |

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Dejuan Burrus for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. STP 16-07-0083. For the reasons explained in this Entry, Mr. Burrus's habeas petition must be **denied**.

**A.    Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## B. The Disciplinary Proceeding

On January 26, 2017, Investigator T. Truex, wrote a conduct report charging Burrus with offense A-111/100, assisting in a violation of law, in particular, Indiana Code section 35-48-4-1(a), delivery of a narcotic drug. The conduct report states:

> On July 7, 2016,[1] I, Investigator Truex, was reviewing camera footage from an [sic] 7/7/16 event. Truex witnessed offender Dejuan Burrus, IDOC # 132368, talking to offender Antonio Twiggs, IDOC # 179364, Burrus then went to the Housing Unit window and watched to ensure the officer did not return to the housing unit before Twiggs finished tampering with the officer's drink. By acting as a look out, Burrus ensured Twiggs would not be caught by staff while placing a narcotic substance in Correctional Officer M. Truex's drink. Burrus's actions violated Indiana Criminal Code 35-48-4-1(a) for delivery of a narcotic substance.

On January 30, 2017, Burrus was notified of the charge of (A-111/100) assisting in a violation of law, Indiana Code section 35-48-4-1(a) delivery of a narcotic substance, and was served with a copy of the conduct report and the screening report. Burrus was notified of his rights and pleaded not guilty. He requested a lay advocate, and a lay advocate was later appointed. Burrus requested Antonio Twiggs (# 179384) as a witness. As evidence, he requested video footage and a test of the bottle contents. He did not waive his right to 24 hours' advance notice of the disciplinary hearing.

After his disciplinary screening, Burrus requested additional evidence:

> 1. Video/audio/written statement that "offender Twiggs # 179384 admitted to Investigator Truex that the substance that was allegedly seen put in Officer Truex's bottle was in fact methamphetamine."
> 2. Any evidence Investigator Truex used to determine that it was a narcotic drug put in Officer Truex's drink, including blood or toxicology results, and a statement from Officer Truex if he felt unusual after drinking the contents.
> 3. "A witness statement from both Investigator Truex and Officer Truex that they are in any way shape or form, blood related or marriage related as defined by Indiana Criminal Code & Procedure 2017 edition."

---

[1] Investigator Truex reviewed video footage on January 26, 2017, but the footage was of an incident that occurred on July 7, 2016. The date that Truex reviewed the video footage appears to have been mistakenly changed to the date of the incident.

> 4. "If there was in fact a blood test done or urine analysis of officer Truex before the alleged incident, I need the results of those, as well as the amount of alleged narcotic drugs that were or had been found in officer Truex's system."
>
> 5. "And finally any evidence that the Department of Corrections has pertaining to this case STP 16-07-0083, which will either prove or disprove how Investigator Truex determined that the substance allegedly placed in M. Truex's drink was positive for the chemical makeup of any narcotic substance as defined by [I.C.] 35-48-1-20…."

Offender Twiggs gave the following statement:

> On 7-7-16 I Antonio Twiggs made the very stupid & childish decision to play a prank on an officer by putting[g] Milk of Magnesia in his drink to give him the runs. When questioned about the incident on 7-8-16 I admitted to putting milk of magnesia in the drink; however, my words were twisted & it was said that I admitted to possessing methamphetamine which I never did! I was also asked if Mr. Burrrus #132368 had any involvement with my prank, I repeatedly told staff members & IA that Dejuan Burrus #132368 had absolutely nothing to do with the incident and that I acted alone.

The request for a test of the contents of the bottle was denied because the officer had consumed the contents. But a video review was conducted on January 31, 2017, and the video summary provided the following:

> On 01/31/2017 at 12:30 pm, I, REC A Smith, reviewed the video footage of the alleged incident associated with case number STP 16-07-0083. On the video Officer Truex is seen leaving the officer's station. At this time, Offender Burrus 132368 is seen briefly talking to Offender Twiggs 179384. Offender Burrus then proceeds to the window, appearing to watch for the officer's return to the dormitory. Offender Twiggs then proceeds to the officer's station. He opens a drawer removing the officer's beverage and pours a foreign substance into the beverage. He then returns the beverage to the drawer. At this time he (Twiggs) proceeds to the window and Offender Burrus. He signals he is done by a pat on the offender's (Burrus') back. Immediately both offenders vacate the immediate area with Offender Twiggs sticking his arms straight over his head in a triumphant gesture. The video clearly shows that both offenders collude, then shows Offender Burrus proceed to a window to act as a lookout while Offender Twiggs tampers with the officer's beverage.

On February 3, 2017, a disciplinary hearing was held in case STP 16-07-0083. Burrus pleaded not guilty and provided the following statement:

> I would like to bring up that last time I was written up for delivery of narcotic substance meth is not a narcotic substance under 35-49-4-1. Meth is a stimulant. Antonio Twiggs says I wasn't involved. I'm asking that I be found not guilty based on methamphetamine is not a narcotic it is a stimulant (35-48-2-6(d)).

The disciplinary hearing officer ("DHO") found Burrus guilty of (A-100/111) assisting in a violation of law, I.C. 35-48-4-1.1 delivery of methamphetamine. In making this determination, the DHO considered staff reports, the statement of the offender, evidence from witnesses, a video review, a confidential incident report, a confidential interview, and the officer's toxicology report. The DHO stated: "Preponderance of all evidence – delivery of methamphetamine is a violation of I.C. 35-48-4-1.1." Due to the seriousness of the offense and the degree to which the violation disrupted/endangered the facility, the DHO imposed the following sanctions: a written reprimand, one year of disciplinary segregation, 365 days' lost earned credit time, and a demotion from credit class 1 to credit class 3.

Mr. Burrus's administrative appeals were denied and he filed the present petition for a writ of habeas corpus.

### C. Analysis

Mr. Burrus argues that his due process rights were violated because 1) he was not allowed to present exculpatory evidence; 2) his mere presence is insufficient to constitute manipulation and coercion for accomplice liability; 3) that methamphetamine is a stimulant, not a narcotic, 4) he was denied the right to an impartial decision-maker; and 5) Indiana Department of Correction ("DOC") policy was violated.

#### 1. *Right to present evidence*

Mr. Burrus argues that he denied his right to present evidence because he was not allowed to present the actual bottle, the evidence of the contents of the bottle, evidence of any

residue that may have been found inside the bottle, and any drug screen of the contents of the bottle. Burrus also contends that his due process rights were violated when he was not allowed to view the confidential evidence.

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 381 Fed. Appx. 494, 497 (7th Cir. 2017) (quoting *Piggie*, 344 F.3d at 679).

At the time of screening, Burrus requested video review and testing of the contents of the bottle. The hearing officer viewed the video, but the request for testing of the contents of the bottle was denied because the officer had already consumed the contents. After his screening, Burrus requested the following additional evidence:

> 1. A video/audio/written statement that "offender Twiggs # 179384 admitted to Investigator Truex that the substance that was allegedly seen put in Officer Truex's bottle was in fact methamphetamine"
> 2. Any evidence Investigator Truex used to determine that it was narcotic drug put in Officer Truex's drink, including blood or toxicology results. A statement from officer Truex that the bottle contents "tasted suspicious or gave him a weird unusual feeling."

> 3. "A witness statement from both Investigator Truex and Officer Truex that they are in any way shape or form, blood related or marriage related as defined by Indiana Criminal Code & Procedure 2017 edition."
> 4. "If there was in fact a blood test done or urine analysis of officer Truex before the alleged incident, I need the results of those, as well as the amount of alleged narcotic drugs that were or had been found in officer Truex's system."
> 5. "And finally any evidence that the Department of Corrections has pertaining to this case STP 16-07-0083, which will either prove or disprove how Investigator Truex determined that the substance allegedly placed in M. Truex's drink was positive for the chemical makeup of any narcotic substance as defined by [I.C.] 35-48-1-20…."

The only two requests for evidence which the respondent denied were testing the contents of the bottle and obtaining statements from Officer Truex and Investigator Truex regarding any familial relationship between them. Burrus does not specifically challenge the denial of a statement explaining the relationship between Officer Truex and Investigator Truex. Dkt. 1, pg 3–6. But even if Burrus's petition did challenge the denial of this statement, such a denial was harmless error. Burrus is entitled to habeas relief only if the erroneous denial of evidence was not harmless and caused actual prejudice. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Presumably, Burrus was trying to determine if there was a relationship between the investigator and the victim in order to allege bias. But there would be no due process violation if the investigating officer and the victim were related. Under *Wolff*, there would only be a due process violation if the DHO—not the investigator—had a relationship to the victim. *See Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (noting that a prisoner's due process right to an impartial decision-maker might be violated if the officer on the review board was engaged in an intimate, romantic relationship with one of the witnesses crucial to the prosecution.). Burrus has otherwise failed to show how a statement regarding whether a familial relationship existed between the investigator and the officer would impact his case. He has therefore failed to show any due process violation by its denial.

Burrus also argues that confidential evidence was wrongly withheld. Prison officials are required to disclose material exculpatory evidence to the offender, but prison officials may properly withhold exculpatory evidence if revealing it to the offender "would unduly threaten institutional concern." *Jones*, 637 F.3d at 847 (citation omitted). The respondent argues that the confidential evidence was not wrongly withheld because it was not exculpatory. The respondent also argues that prison officials may deny an offender the opportunity to view the evidence himself to preserve institutional security. *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985). Here, DOC staff deemed the incident report, medical report, interview report, and security camera footage as confidential in order to preserve institutional security, protect the people involved in the investigation, and safeguard the privacy of the victim's medical information. These are reasonable bases upon which to deny the requested information. Further, Burrus was notified of the facts against him. The conduct report and video summary, which Burrus was allowed to view, state that Burrus assisted in the violation of law because he was acting as a lookout for Twiggs. Burrus therefore had an opportunity to present a defense. *see Rasheed-Bey*, 969 F.2d 357, 362 (7th Cir. 1992) (holding that although confidential case files were withheld, the offender "was notified of the underlying factual bases of his charges through the conduct and investigative reports so that he could prepare a defense to those charges."). In addition, the respondent has provided this evidence to the Court for *in camera* review. Based on its review of these materials, the Court concludes that no exculpatory evidence was withheld.

2. *Sufficiency of the Evidence*

Burrus next argues that his mere presence is insufficient to constitute manipulation and coercion for accomplice liability and that methamphetamine is a stimulant. In other words, he argues that evidence against him is insufficient. Challenges to the sufficiency of the evidence are

governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Burrus was convicted of assisting in a violation of law. Assisting is defined as: "Attempting or conspiring or aiding and abetting with another to commit any Class A offense." And violation of law, is defined as: "Violation of any federal, state or local criminal law (Must specify by name and criminal code number)." The conduct report originally charged Burrus with violating Indiana Code section 35-48-4-1 for delivery of a narcotic. But at the hearing, the DHO changed the offense to a violation of Indiana Code section 35-48-4-1.1 for delivery of methamphetamine. Indiana Code section 35-48-4-1.1[2] provides in relevant part:

> (a) A person who: (1) knowingly or intentionally: . . . (C) delivers; . . . methamphetamine, pure or adulterated; . . . commits dealing in methamphetamine, a Level 5 felony, except as provided in subsections (b) through (e).

---

[2] Modifying the disciplinary charge at the hearing does not violate an offender's due process right to advance notice, as long as the facts underlying the original offense support the modified charge and allow the offender to defend himself. *Northern v. Hanks*, 326 F.3d 909, 910-11 (7th Cir. 2003). The only substantive change was that the substance placed in the officer's drink was identified as methamphetamine, rather than a narcotic. And Burrus himself argued at the hearing that the charge was wrong because methamphetamine is a stimulant. He was therefore aware of the facts supporting the charge and the changing the statute violated to Indiana Code section 35-48-4-1.1, did not violate Burrus's due process right to advance notice of the facts underlying the charge. *Id.*

"Delivery" is defined as: "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." Ind. Code § 35-48-1-11. The conduct report and video review summary described security camera footage which showed Burrus acting as a lookout while offender Twiggs poured an unknown substance in officer Truex's drink at approximately 1:30 pm on July 7, 2016. An incident report described officer Truex's reaction after consuming the drink. A day after the incident, Officer Truex tested positive for methamphetamine. This is "some evidence" to support a conclusion that Twiggs put methamphetamine in Officer Truex's drink and Burrus assisted him in doing so by acting as a lookout.

### 3. *Impartial Decision-Maker*

Burrus also suggests that his hearing officer was not impartial. A prisoner is entitled to an impartial decision-maker. *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995); *see also Wolff*, 418 U.S. at 570–71. But Burrus does not provide any evidence or argument showing how the DHO specifically was biased against him. And the Seventh Circuit has held that "simply alleging bias is not enough to support disqualification." *Higgason v. Hanks*, 134 F.3d 374 (7th Cir. 1998). "Adjudicators are entitled to a presumption of honesty and integrity," *Piggie v. Cotton*, 342 F.3d 660, 666–67 (7th Cir. 2003), and Burrus's vague mention of "biases" is not enough to overcome that presumption. Burrus therefore has failed to show that he was denied his right to an impartial decision-maker.

### 4. *Violation of DOC Policy*

Burrus also alleges that DOC's policy or procedure was violated. Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to

guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the one at issue here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 Fed. Appx. 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 Fed. Appx. 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Burrus to the relief he seeks. Accordingly, Mr. Burrus's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/7/2017

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DEJUAN BURRUS
132368
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Andrea Elizabeth Rahman
OFFICE OF THE INDIANA ATTORNEY GENERAL
andrea.rahman@atg.in.gov